Securitas against Workers' Compensation Commission, 5090184. Counsel, please. Good morning, Your Honors. My name is Bob Hoffman. I represent Securitas in this matter. The facts in this case are relatively simple. We have a security guard who testified that while he was descending stairs, his ankle gave out, or he slipped descending the stairs. The dispute here focuses on whether or not this injury arose out of his employment. That is to say, whether or not it was caused by some risk of his employment. It's our position that we respectfully submit that the commission, in this case, essentially was trying to adopt or follow a positional risk doctrine here by finding compensation. Workers' Compensation Act is not an insurer of all employee injuries. Not every injury that occurs during the course of employment is compensable because they don't all arise out of the employment because there isn't a risk of employment. Here, we respectfully submit that there was no risk of employment here. The petitioner testified he was descending a common stairway in a building, a stairway that was used by the residents of the building and their guests. He testified that there was no debris on the stair, the lighting was average, I believe was the term he used. The only thing that he can point to is an inconsistent statement that there was dampness or condensation on the stairs. However, that comment is in direct contrast to a recorded statement that he gave shortly after the accident. Counsel, there's no argument that obviously it occurred in the course of the employment. You're arguing did it arise out of the employment. You're going to make the argument or I assume that the act of walking downstairs in and of itself does not establish a risk that's greater than the general public. Correct, because here he did not testify that he was carrying anything, that he was rushing or distracted. He was simply descending a flight of stairs. However, isn't it true that part of his job duties is or are as he testifies to, he has to look around, he checks the lobbies, the screens. Isn't this part of his job is to make these observations? Couldn't the commission infer that he's doing that, perhaps he's distracted, and when he descends the stairs he's distracted by his job duties, ergo he falls down or slips? Well, I guess, I hate throwing generic terms out, but a decision can't be based on speculation, guess, or conjecture. Here there is no evidence from the petitioner that he was looking for anything, that he was distracted, that he was rushing. There's no evidence whatsoever that there was anything that was distracting him from the act of going downstairs. As a result, he was in the same position as any person who would enter that building and descend the stairs. Was he in the same position? I mean, is there any evidence how frequently he descended and ascended stairs? This was a claim of a specific accident, Your Honor, not a repetitive trauma, so no, there isn't. Did you file a reply brief? No, Your Honor. Did the claimant make any additional arguments in her brief? The claimant raised an argument regarding jurisdiction, however, it's my position that that is an improper argument because there was no notice of appeal, there was no filing of a backening statement raising this issue. She can't file a notice of appeal, she won the case. She could file a notice of appeal. No, she can't. What she can do is she can raise any issue she wants in response to your appeal to support the decision below. But once she's a winner, she has no right to file a notice of appeal. Appeal from what? What does she want? Well, it would be a cross appeal. You don't file appeals for findings. You file appeals for judgment. What about this issue that the bond doesn't equal the amount fixed by the commission? There was a minor error in the amount of the appeal. The bond should have been $10,100. It was written as $10,000. It's our position that this was in compliance with the act. What case is it? I would say the Kavonis case does, Your Honor, which talks about substantial compliance with the act. In regard to which aspect of the act? I thought that was a bond issue, but I don't recall. Are they speaking of substantial compliance in form or are they speaking of substantial compliance in substance? I mean, is $100 less than the commission fixes a formal issue or is it an issue of substance? I'm looking for a case that says that if there is a minor failure to comply with an issue of substance, that we still have jurisdiction as opposed to merely a minor irregularity in form. Well, I would consider this a form issue as opposed to a substance issue. Amount of money is a form issue? Well, when it's this minimal amount, yes. Again, you have no authority suggesting that alleged de minimis error in the amount of money can be excused, do you? I have found no case law either way on the issue, Your Honor. My question about the frequency of going up and down stairs wasn't a repetitive trauma question. It was just exposure. We usually use a standard of exposure to a risk to a greater extent than the general public. I mean, the argument would be is descending and ascending stairs a risk? And then is the general public exposed to that risk at a certain rate as opposed to the job duties required by this claimant? That's why. That goes to specific accident. Now I understand your question. I'm sorry. With regard to that, Your Honor, it's my recollection of the testimony. There is no testimony about the frequency of times or number of times he had to go down the stairs. There is certainly no – and I think it would be speculative to say that in doing so, he was doing so more than someone who lives in the building. It would be like me arguing that there were people in the building who were afraid of the elevators, and so they used the stairs all the time. That may be true, but I don't have any evidence of that. Well, in addition to using the stairs, are people in the building looking around to see what's going on in various areas for the safety of the residents there? I mean, aren't there some additional things he's doing? Otherwise, anybody could be patrolling the stairs. I mean – Well, I guess my question is that there's no evidence that he was looking for anything while he was – the testimony is he was descending stairs. It wasn't that – yes, he was a security guard, but there's no testimony that at the time this happened, he was looking for something, whatever. He was simply descending stairs from one floor to another. How did the stairs get damp? I don't know, Your Honor. Did he testify to it? He testified. He testified. The first we heard of this was when the case was tried, and I don't know how an interior – I don't know how an interior stairwell gets damp or moist in the middle of a building when – by middle of the building, I mean there was five or six floors of this building. He's on the third – between the third and the fourth floor. There's no testimony that there's windows in this stairway that were open, that it had been raining. There's nothing – he just comes up with this story, which – the other part of the problem I have with this, Your Honor, is the statement he gave earlier, which said nothing about any of this, and it was a lengthy statement. Would it make a difference as to whether that water or the dampness was a result of a natural or unnatural accumulation? I hadn't thought of that. I hadn't thought. I suppose – It was November 13th, wasn't it? If it's a natural accumulation, then I would certainly argue that he was exposed to the same risk as the residents and guests of the building. If it was a unnatural accumulation, which there is no evidence of, that might change the situation some in that he might then have been exposed to a risk that was greater than the general public. But again, there is no evidence of such a risk – of such – that the dampness or water, whatever you want to call it, was an unnatural accumulation. If it's natural versus unnatural, who has the burden of establishing unnatural or natural? I believe the petitioner has the burden of proof, Your Honor. He has to prove each and every element of his claim. And here, one, we have conflicting comments from the petitioner as to whether or not there was anything wrong with the stairway. When first asked about it, he says no. Then when he's in trial, months after the incident, he reveals the story of dampness. I think his credibility is highly suspect to begin with. But yeah, I think it's his burden of proof to establish where, you know, one, that there was a defect, and two, you know, in a situation like this, what the cause of the defect was. And for these reasons, Your Honor, I think especially both sides have cited cases to support their position on whether or not this is a compensable accident. I think that's part of the problem we have here with the commission is that their decisions are all over the board. I think the closest case is the Back v. Sandoval High School case where compensation was denied when someone stumbled going down exterior stairways, which they claimed were damp. Here, we have an interior stairwell. And so if an exterior stairwell is not compensable, I don't see how an interior stairwell would be compensable. And secondly, the Colombo case, which is the case I argued, their compensation was denied because there was no risk of employment because the petitioner simply testified he was bending down to pick up some screws when his knee went out, which I would say is analogous to someone who's testifying he's going down some stairs and he stumbles or his ankle gives out. What makes the conclusion reached by the commission? What makes an opposite conclusion than the one reached by the commission clearly apparent? What specifically? Well, I guess part of my argument here, I think the petitioner has the burden of proof here. And when the petitioner has conflicting stories of what happened, I think his testimony is negated. And without his testimony about this dampness, I think the evidence or the decision is against the manifesto. Think about what you just said. What makes the fact that his testimony is arguably conflicting with other evidence, what legal authority is there for the proposition that his testimony is negated and is of no weight? What legal authority? I'm not sure it's of no weight, but I think that puts this into the category where this decision is against the manifest way of the evidence. It doesn't have to be all the evidence. If you're ignoring the well-settled proposition, are you not, that it is within the commission's province to determine the weight and credibility of the evidence? Is it not? Don't they weigh the inconsistencies and don't they determine the weight of the evidence? Yes, but that's why I think the greater argument here is was there a risk of employment? And my position is that there was no risk of employment. And to argue or talk, as the commission did during the oral arguments in this matter, about him being distracted or something, the problem with that argument or theory is one, it's not in their decision, and two, there's no evidence that he was looking at anything or distracted when this incident happened. Let me go back to the jurisdictional issue. Do the residents of Carpentry or Beasley help you? Your Honor, I'm not, I can't address, the names don't give me any facts. Well, apparently the claimant's position with respect to the jurisdiction issue didn't mean anything to you. You didn't reply briefly. You don't know about these cases. I felt it was not an issue that was properly raised. How do we know that when you don't even take the time to file a reply brief? I apologize for that, Your Honor. Thank you, counsel. Thank you, Your Honor. Court, excuse me. Can you please? May it please the court, counsel, my name is Claire Burley, and I represent Wayne O'Connor. You never raised the jurisdictional issue before, did you? I raised it to the circuit court. It's not apparent that he ever ruled on it. He did rule. Initially, he dismissed the case, and then there was a motion to reinstate, which unfortunately I wasn't aware of. And then he reinstated the case. When we went to him to get a docketing and a briefing schedule, we wanted to brief this issue, and he said, I've already decided that. So we went forward with the regular appeal. As you stated, I'm in a little bit of a hurry. I'm reading his half-sheets, and from the filing of the case on March the 8th, he went to a decision on April the 9th where he says that he had taken it under advisement and that he doesn't find the decision against the manifesto of the other one. I don't find any reference here that he ever ruled on a jurisdictional matter. And he said that there were issues raised for review. And? Did he suffer an injury? Was there a weight in wages? Did he weigh the credibility that he rose out of? I filed a motion to dismiss to the circuit court on March the 7th of 08, and probably I made a mistake in my brief to not include that timeline. The only reason I say that is it's not here. It's not on this half-sheet. The filing of the motion is not here. Are you looking at appellate's brief? No, I'm looking at the record that you attached, or he attached as an exhibit to his brief, which happens to be the court's half-sheet. There's no indication here that he ruled on anything other than the manifest void of the evidence. There is in the transcript, it is in the record, my motion to dismiss, and I believe his orders as well, when he first dismissed it and then when he reinstated it. What's your recollection on the rationale of the ruling that the bond was sufficient? Or did he specifically address it? He didn't address it. I made the argument that I've made in my brief, that it was not sufficient. And I challenged it on two issues. I challenged it on the fact that Diane Good, who to this day I do not know who she is, was not identified as an officer of the company. I think that's the least compelling argument. What about the substance issue that the amount was not what it was supposed to be? And how did the circuit court judge address it? He at first agreed and dismissed the appeal, and then a motion to reinstate was filed listing the Lee case, the Wal-Mart case, and Kavonius, and he made a summary reinstatement of the appeal. No reasoning or rationale stated? No reasoning. What's your position on whether or not it complies? My position is that it does not comply. And the most damning part that does not comply is the amount of the bond. The identification... Should it be case law authority either way? Yes, residential. Residential is the case that discusses it, and it says the fact there is an argument made that the amount does not have to be what is said by the commission, and the court said that position was absurd. The amount of the bond is a jurisdictional subject matter. Even if it's allegedly de minimis of $100? Correct. Okay. Nick, with respect to Judge Hoffman's question concerning what happened, the docket sheet, as far as the respondent is concerned, starts with an entry showing continued on apparently January 3 of 08, so that there's no entry before that, and that probably could have been something you should have caught to make sure that the entries that you're talking about are, in fact, there. It is, and that was an error on my part, and if you wanted me to supplement the court, I could certainly do that with... Well, I mean, if it's truly jurisdictional, it doesn't make any difference because it's not waived. So, and it wouldn't make any difference if you raise it below. We have an obligation to raise it in our own right if we find it. So, yeah, I don't think you have to supplement it. I was just inquiring as to whether it was ever raised. As to the merits of the appellant's argument, there is evidence as to how many times Mr. O'Connor was on the stairwell. He testified he worked an eight-hour shift. He would walk around the premises, which would include walking up one stairwell, up and down through the building, up the other stairwell, walking the outside area, and then starting around again. It would take about a half an hour for him to walk around before he would start again. So if you do the math, in an eight-hour shift, he would have been on the stairwell that he fell on approximately 16 times in a shift. If you count the other stairwell, approximately 32 times. So is it your argument that it's the frequency of going up and down the stairs that is the critical issue? Because he does raise an argument that I think is consistent with the case law. The act of walking downstairs does not in and of itself establish a risk greater than those faced outside of work. The injury is compensable if some employment-related factor is a positive factor in the fall. So what specifically is the employment-related factor that was a cause of the fall? Yes, and first, if I could address that, say this case was not decided on a positional risk theory. It was decided on an increased risk theory. And that would be the amount that he was on the stairwell, what he was doing when he was on the stairwell. There's a lot of discussion about his saying it was damp. When he had the recorded interview with the woman, he was asked if there was debris. There was no debris on the stairwell. And quite frankly, I don't think Wayne knew why he fell. Consistent within the medical records, and consistent, by the way, with the conversation of Corey Best, who is Securitas' general manager, two days after the accident, he describes a slipping and twisting. And that is consistent with the medical records of all of the doctors that he went to see shortly thereafter the accident. The inconsistency and the confusion in the case is that recorded interview. And the commission resolved that in his favor. So if I haven't answered your question, it is the frequency. It's how much he's on there, what he is doing, what he is distracting. It's frequency as well as the duty of a security officer to observe while he is. Correct. And that is exactly what we discussed with the commission. These very same questions were asked. He is walking up and down the stairwells. There are windows in the stairwells. He is trying to check to see if things are safe. You know, he's looking around. He's making observations that the average citizen would not be making. Yes, and he is doing it multiple times in a night, more than the average citizen. This was not a public building. This is a private building. It was limited to people like Wayne, the residents, and guests. The question as to the condensation, it wasn't made up by Wayne. He didn't mention it to the lady in the recorded interview. First, it wasn't asked. And this is a circumstance that is familiar. It's a condensation problem. It's an old building. It's a cold building. And that happens when it is cold and old. I doubt it's a dripping wet sort of thing. I don't know if that's what caused him to slip. I don't know if anybody can say. The case that I cited, the appellate case, which has precedence or value to you to review, says you analyze this as an unexplained fall or an idiopathic. There's no evidence of an idiopathic condition that caused him to fall. So it's an unexplained question from which you make inferences. And that is what the commission did, and they resolved that in his favor. If you didn't have the observational requirement or the testimony from the claimant that he was looking about, could you still rely solely on the frequency with which he has to patrol the building and go up and down the stairs? Yes, sir, I think so. I think that is definitely part of an aspect of the increased risk, how often he is on those stairs and how often he is exposed to the risk of slipping and falling. I am at a, I had kind of a conundrum on how to proceed on the case. I do think there is no jurisdiction to even hear this appeal, yet I wanted the circuit court level. Well, there's jurisdiction to hear the appeal. The question is, is there jurisdiction for the circuit court to hear the administrative review? That's a different issue. Correct. I tried this case almost three years ago as a 19B, and because of appeals, he still does not have treatment and he still does not have benefits paid to him. So my hope is, if you decide there is no jurisdiction to hear it at the circuit court level, that we don't have to be going back and forth on appeals. And as in the Beasley case, that was a case that was decided there was no jurisdiction, but the court also addressed the main issues of the case, the manifest way, the arguments as to accident and average wage in those circumstances. We couldn't decide both. I mean, we could decide there was jurisdiction and then decide the underlying issue, but if we were to decide there was no jurisdiction in the circuit court, our opinion would have to stop at that point in time. And there was a dissent in the Beasley case to that. The court did decide, made a reference. But I understand what you're saying. Thank you. Thank you. Your vote, please. First of all, Your Honor, just so we're clear, the portions of the docket sheets in my brief are not the complete docket sheets from the court. Those are in the record on appeal. I just attached to this brief the docket sheets that contained the court's ruling on the circuit court review. The ruling regarding the jurisdiction was earlier, I believe. The docket sheets I attached, I believe, were late 2008 and early 2009. The court's ruling on the jurisdiction, I believe, was in May or June of 2008. Is that the motion that you attached to your appendix? You got a motion there to vacate some order? March the 6th, 2009. Is that it? Reversal of the order will not be counted. I filed its motion to reconsider is the motion in question where it was addressed, and that's at C-426 and 427 of the record on appeal. So this is just an incomplete draft sheet? Yeah. This is an incomplete draft sheet. I didn't think I had to attach this draft sheet. That's right. Your Honor, again, I guess with getting back to whether or not there's a risk of employment here, I'm not sure frequency is a relevant factor here. There are cases where, I can't think of the name of the case, but I believe it was a Walgreens case where an employee was injured going upstairs to go to the bathroom, and compensation was denied there because it was a stairway that was open to the general public. Well, obviously, an employee is going to use stairways in a store far more frequently than a customer would. So I don't think frequency is something that creates an increased risk. Well, why is that? I mean, you're talking about an activity of going to the restroom, which is a normal human activity, and that's the standard against which you measure. Is there a risk greater than that of the general public? I mean, I don't know whether you take judicial notice or whether it's an evidentiary fact that stairs are a risk. I'm not sure. You have a greater risk of fall on the stairs than you do a flat surface. Well, yeah, but that's a risk that's common to the general public. Not there when you get into frequency. Well, I guess that's, you know, but there's no evidence of how, you know, like I said, you know, if there's people in the building who never use the stairway, or excuse me, never use the elevator, then they have a greater risk than this gentleman did. So, you know, without evidence as to some increased risk, I don't think frequency standing by itself is evidence of an increased risk. And while, you know, I just, you know, when I went through the record, I don't recall the petitioner testifying that he was observing anything at the time of this. And I think it's important to note that even counsel says, the guy doesn't know how he fell. Well, there has to be some risk of employment. If he doesn't know how he fell, where's the risk? I'm not sure if you sufficiently distinguished the frequency issue in response to Justin's question, because I understand what you're saying. If the person's an office worker and he goes down the stairs twice a day, he's not exposed to a greater risk than the public. If it is an inherent part of his job to go up and down the stairs all day or all night, how can there not be a relevant consideration as to the increased risk? Well, I'm going to have to preface what I'm about to say, that I'm not sure my recollection of the facts is entirely accurate. But I believe what this gentleman's testimony was is that he made the rounds twice a day. So that's going on the stairs twice a day. That's not a risk of employment. What if the evidence were, as opposing counsel, I think it's suggested, every 30 minutes? Has that changed the pattern a little? I get it. It may make it a closer question, but it still would be my position that the simple act of going up and down stairs is not a risk of employment, unless there's some defect. I mean, if he's carrying something, if, you know, he's doing something. Up and down stairs is not a simple act. Well, I do it every day, Your Honor.